UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MICHAEL C. GRIER,

          Plaintiff,

      v.                                           Case No. 22-C-587

CO RAMARK, et al.,

          Defendants.

## ORDER OF DISMISSAL

Plaintiff Michael C. Grier, who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. On July 15, 2022, the Court screened and dismissed the original complaint for failure to state a claim. Dkt. No. 16. The Court concluded that Plaintiff did not allege facts from which the Court could reasonably infer that Milwaukee County and/or WellPath (the only named defendants at the time) failed to train their employees or had a custom or policy that violated his civil rights. *Id*. The Court noted that Plaintiff *may* have claims against specific individuals, so the Court gave Plaintiff an opportunity to file an amended complaint to attempt to state a claim. *Id*. at 5-6. Plaintiff filed an amended complaint on July 28, 2022. Dkt. No. 21. This order screens and dismisses the amended complaint.

### ALLEGATIONS OF THE AMENDED COMPLAINT

Plaintiff is an inmate at the Milwaukee County Jail. Dkt. No. 21. The named defendants include Milwaukee County Sheriff Earnell Lucas, Supervisor Dobson, Capt. Ronski, Lt. Newmann, Mr. Jones, CO [Correctional Officer] Ramark, CO Jones, CO Praber, CO Chen, CO

Steffen, CO Anderson, Nurse Chapelle, PSW [Psychological Services Worker?] Lisa, PSW Kate, PSW Sarah, "Bio Cleanup Team," and "WellPath Emergency Team." *Id*. at 1-2.

Plaintiff arrived at the jail on or around April 20, 2021. *Id*. at 3. Since then, he has not had a pillow for his bed. *Id*. Plaintiff states that a majority of the inmates at the jail don't have pillows. *Id*. at 3-4. He complained to Dobson about the pillow issue. *Id*. He has also asked Praber and Chen for a pillow in the past but neither gave him one. *Id*. at 6.

About a year later, on April 12, 2022, Plaintiff woke up to feces and sewage water in his cell. *Id*. at 3. He told Jones, Chen, and Praber that he "inhaled biohazard" and he asked them to call the medical team so that he wouldn't get sick. *Id*. at 3 & 6. Jones and Praber responded, "it was not a good time" and "maybe later." *Id*. at 6. Chen "flat out refused." *Id*. Plaintiff states that he later vomited. *Id*.

About 10-15 minutes later, Plaintiff tried to file an inmate complaint through the jail kiosk but someone sitting in the officer's station (not a defendant) flashed the lights and told him to "step away from the kiosk." *Id*. Plaintiff told that person, "my head was hurting," but that individual responded, "go sit down we don't care." *Id*.

Later that day, Chen directed Plaintiff and another inmate to walk through the feces and sewage water to go to a different area of the jail so staff could clean. *Id*. Plaintiff states that his feet "broke out into sores later." *Id*. Plaintiff explains that the Bio Cleanup Team "sucked up" the biohazard water but did not sanitize. *Id*. He states that Praber told him that the officers working the unit are responsible for supervising the Bio Cleanup Team. *Id*. at 4. Other inmates also complained about the lack of sanitization. *Id*.

About three days later, on April 15, 2022, Plaintiff again woke up to sewage in his cell. *Id*. at 3, 6. He asked Ramark to let him out of his cell so he wouldn't get sick, but Ramark left Plaintiff

2

in his cell for a few hours. *Id*. at 3-4. Plaintiff later slipped and hit his head. *Id*. at 4. He asked Ramark to call the medical team, and she said she would, but the WellPath Emergency Team never arrived. *Id*. A few hours later, during medication pass, Ramark allowed Nurse Chappelle to examine Plaintiff. *Id*. Nurse Chappelle confirmed that Plaintiff's head was swollen and she gave him Tylenol. *Id*. She also recorded Plaintiff's emotional distress with PSW Sarah, PSW Kate, and PSW Lisa. *Id*. Plaintiff states that he has anxiety, depression, PTSD, ADHD, and insomnia as well. *Id*. at 6. It has caused him to pull out his hair into bald spots. *Id*.

Plaintiff states that "all of the sheriffs that work here are [Earnell Lucas'] subordinates." *Id*. at 4. Steffens and Greer allegedly told Plaintiff that "they were not trained on how to deal with inmates in these kinds of emergency; they were only taught DOC 350 regulations." *Id*. Ronski allegedly did the training at the academy. *Id*. at 5. Anderson allegedly told Plaintiff that "Lucas and his subordinates make up the policy at the Milwaukee County Jail." *Id*. Newmann "is in charge of facility maintenance hence he failed to train the policy." *Id*. at 5. Finally, Mr. Jones "knows that they were not trained by the facility." *Id.* at 2. For relief, Plaintiff seeks monetary damages. *Id*. at 7.

## THE COURT'S ANALYSIS

"To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that he or she was deprived of a right secured by the Constitution or the laws of the United States, and that this deprivation occurred at the hands of a person or persons acting under the color of state law." *D.S. v. E. Porter Cty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. Cty. of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)).

Plaintiff's amended complaint contains numerous different grievances against various individuals. But, at bottom, they're all too vague or insignificant to state a claim. Plaintiff was

3

Case 2:22-cv-00587-WCG   Filed 08/29/22   Page 3 of 9   Document 24

already given an opportunity to amend his complaint (along with a guide on how to draft an amended complaint that the Court could properly screen), but he still did not state a claim. The Court will therefore dismiss this case for failure to state a claim.

I.  **Defendants Earnell, Ronski, Newman, and Mr. Jones**

Plaintiff reiterates in his amended complaint that he seeks to proceed with a claim regarding failure to train against Earnell, Ronski, Newman, and Mr. Jones. Dkt. No. 21 at 5. He also filed an unsigned letter on August 12, 2022, asking to add Milwaukee County as a defendant. Dkt. No. 23. Plaintiff states, "I am alleging that the municipality had a decision officially adopted and promulgated by officers that violated my constitutional rights." Dkt. No. 21 at 5. He states, "I am alleging that the failure to train constituted an official custom or policy for purposes of liability under §1983, where the failure to train amounts to deliberately indifferent to the rights of persons with whom they come into contact." *Id*. And he states, "the difference between inadvertence and policy is that the policy is made by Earnell Lucas and his subordinates many of which work here and have been working here a long time." *Id*.

As explained in the prior order, to state a *Monell* claim, Plaintiff must allege that the municipality or a final decision maker had a "policy statement, ordinance, regulation, or decision officially adopted and promulgated by officers" that violated his constitutional rights. *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 690-91 (1978). Failure to train is an official custom or policy for purposes of §1983 "only where the failure to train amounts to deliberate indifference to the rights of persons with whom [they] come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388 (1989). Liability attaches "where—and only where—a deliberate choice to follow a course of action is made from among various alternatives by [] policymakers." *Id*. at 388-89. "[I]t may be difficult to tell the difference between inadvertence

4

and a policy to omit something." *Glisson,* 849 F.3d at 379. But "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality…can [the municipality] be liable for such a failure under § 1983." *City of Canton,* 489 U.S. at 388-89. Without an allegation of a deliberate or conscious choice, a municipality's failure to train is not properly thought of as a "policy or custom" that is actionable under § 1983. *Id*. at 389.

Plaintiff's allegations regarding failure to train merely parrot the elements of a failure to train claim. He does not provide any facts supporting a reasonable inference that policy makers made a deliberate policy choice among alternatives. Plaintiff states that he is *not* alleging "inadvertence" but that does not provide any additional information. Plaintiff therefore fails to state a failure to train claim against Earnell, Ronski, Newman, and Mr. Jones. *See e.g. Gallagher v. O'Connor*, 664 F. App'x 565, 569 (7th Cir. 2016) (noting that "boilerplate allegations that trace the legal requirements of a *Monell* claim" are not enough to state a claim).

## II. Defendant Dobson

Plaintiff states that he told Dobson that "the pillows not being here has become a custom of the jail." Dkt. No. 21 at 3-4. Inmates have a constitutional right to bedding, but a lack of a pillow does not violate the constitution. *See, e.g.*, *Pippins v. Adams Cty. Jail*, 851 F. Supp. 1228, 1233 (C.D. Ill. 1994) (concluding that an allegation of "no pillow or sheets" only amounts to "dissatisfaction" with the bedding at a jail and it was "not a matter of constitutional magnitude"); *Brown v. Duvall*, No. 15 CV 1672, 2016 WL 3125002, at *4 (N.D. Ill. June 3, 2016) (concluding that "a thin mattress without a pillow" does not violate the constitution). Plaintiff does not allege that he lacked a bed, a mattress, a blanket, or sheets. He also does not allege any injury from the lack of a pillow. Plaintiff therefore does not state a claim against Dobson.

### III. Defendants Jones, Chen, and Praber (April 12, 2022 incident)

Plaintiff alleges that he asked Jones, Chen, and Praber to call the medical team on April 12, 2022, because he "inhaled" the smell of feces and sewage water. They allegedly refused. To state a claim for denial of medical care under the Fourteenth Amendment, Plaintiff must allege that (1) he had an objectively serious medical condition and (2) the defendant's response to the medical condition was objectively unreasonable. *Williams v. Ortiz*, 937 F.3d 936, 942-43 (7th Cir. 2019); *James v. Hale*, 959 F.3d 307, 318 (7th Cir. 2020); *Miranda v. Cty. of Lake*, 900 F.3d 335, 346-47 (7th Cir. 2018). Inhaling a bad smell is not an objectively serious medical condition. Further, at the time Plaintiff spoke to Jones, Chen, and Praber, Plaintiff had no injuries. Therefore, their refusal to call the medical team was not objectively unreasonable.[1] Plaintiff fails to state a denial of medical care claim against Jones, Chen, and Praber.

Plaintiff further alleges that Chen made him walk through the feces and sewage water on April 12, 2022, to go to a different area of the jail while staff cleaned. He states his feet later broke out in sores. To state a conditions-of-confinement claim under the Fourteenth Amendment, Plaintiff must allege that the conditions of his confinement were objectively unreasonable; that is, he must show that the conditions were not "rationally related to a legitimate non-punitive governmental purpose" or that they were "excessive in relation to that purpose." *Hardeman v. Curran*, 933 F.3d 816, 822-23 (7th Cir. 2019). It's unclear how Plaintiff expected to leave his cell that overflowed with feces and sewage water, other than by walking through it. Toward that end,

---

[1] Plaintiff states that he *later* vomited from inhaling the bad smell, but vomiting also is not a serious medical need absent other more serious symptoms. *Gayton v. McCoy*, 593 F.3d 610, 621 (7th Cir. 2010) ("Vomiting, in and of itself, is not an uncommon result of being mildly ill, and, absent other circumstances (e.g., vomiting continuously for a long period of time, having blood in one's vomit, or the like), does not amount to an objectively serious medical condition."). Plaintiff also does not allege that he told anyone about the vomiting.

6

Plaintiff does not allege that Chen made him walk through the sewage overflow in an unreasonable or punitive way (for example, by requiring him to do so without shoes on or refusing to provide clean clothes afterwards). Plaintiff fails to state a conditions-of-confinement claim against Chen.

Plaintiff also states that Praber and Chen denied him a pillow in the past. As noted above, the lack of a pillow does not violate his constitutional rights. Even if it did, his allegation is far too vague to state a claim. His assertion that they denied a pillow at some point in the past, without any specific details about when it happened or what was said, does not give Defendants adequate notice of the claim. Plaintiff does not state a claim against Praber and Chen regarding denial of a pillow.

### IV. Defendants Ramark, Chappell, PSW Lisa, PSW Kate, and PSW Sarah (April 15, 2022 incident)

Plaintiff states that Remark made him stay in his cell with the feces and sewage water for several hours on April 15, 2022 before it was cleaned. But the Seventh Circuit has held that keeping inmates in their cells for an hour or two before cleaning a toilet overflow was not objectively unreasonable. *See Mays v. Emanuele*, No. 20-2653, 2021 WL 2935374, at *27 (7th Cir. July 13, 2021) (citing *Mays v. Dart*, 974 F.3d 810, 820-21 (7th Cir. 2020); *Hardeman v. Curran*, 933 F.3d 816, 824 (7th Cir. 2019)). Plaintiff does not allege any other facts showing that the circumstances were objectively unreasonable. Plaintiff does not have a conditions-of-confinement claim against Remark regarding this incident.

Plaintiff also states that he told Ramark to call the medical team on April 15, 2022, because he slipped and hit his head. Ramark said that she would call the medical team, but WellPath Emergency Team did not timely arrive. Instead, he had to wait a few hours until medication pass, when Ramark allowed him to see Nurse Chappell. Minor aches and pains, however, do not violate the constitution. *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997) ( "[A] mild headache or

7

Case 2:22-cv-00587-WCG   Filed 08/29/22   Page 7 of 9   Document 24

minor fatigue—the sorts of ailments for which many people who are not in prison do not seek medical attention—does not by its refusal violate the Constitution."). Plaintiff states he slipped and hit his head but doesn't describe if he felt any pain, if there was bleeding, whether he passed out, or any other circumstances that would establish that he suffered an objectively serious medical need. Moreover, Plaintiff was examined by Nurse Chappell a few hours later during medication pass. Waiting a few hours for medical care is not objectively unreasonable as ordinary citizens have to wait at least as long for medical care in the emergency room. *See, e.g.*, *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (explaining that a several hour delay in receiving medical care is not "unreasonably long" because "the public often waits longer at hospital emergency rooms"). Plaintiff does not have a denial of medical care claim against Ramark.

Plaintiff alleges that Nurse Chappell examined him during medication pass and gave him Tylenol. He further alleges that PSW Lisa, PSW Kate, and PSW Sarah were aware he had mental health issues because Nurse Chappell made a notation in his file. The Court cannot infer that Nurse Chappell, PSW Lisa, PSW Kate, and PSW Sarah did anything to unreasonably deny or delay medical care based on those allegations. Plaintiff therefore fails to state to denial of medical care claim against Nurse Chappell, PSW Lisa, PSW Kate, and PSW Sarah.

V. **Other Defendants**

Plaintiff's only allegation against Steffens and Anderson is that they gave him information about who trained them and how they were trained. The Court cannot reasonably infer that Steffens and Anderson did anything to violate Plaintiff's constitutional rights based solely on that allegation. Finally, the "Bio Cleanup Team" and the "WellPath Emergency Team" are categories of people not specific "persons" within the meaning of §1983. Therefore, Plaintiff fails to state a claim upon which relief can the granted and the Court will dismiss this case.

## CONCLUSION

**IT IS THEREFORE ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for failure to state a claim.

**IT IS FURTHER ORDERED** that the Clerk of Court document that this inmate has incurred a "strike" under 28 U.S.C. §1915(g).

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where the inmate is confined and emailed to DLSFedOrdersEastCL@doj.state.wi.us.

Dated at Green Bay, Wisconsin this  29th   day of August, 2022.

s/ William C. Griesbach
William C. Griesbach
United States District Judge

This order and the judgment to follow are final. Plaintiff may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Fed. R. App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Fed. R. App. P. 4(a)(5)(A). If Plaintiff appeals, he will be liable for the $505.00 appellate filing fee regardless of the appeal's outcome. If Plaintiff seeks leave to proceed *in forma pauperis* on appeal, he must file a motion for leave to proceed *in forma pauperis* with this court. *See* Fed. R. App. P. 24(a)(1). Plaintiff may be assessed another "strike" by the Court of Appeals if his appeal is found to be non-meritorious. *See* 28 U.S.C. § 1915(g). If Plaintiff accumulates three strikes, he will not be able to file an action in federal court (except as a petition for habeas corpus relief) without prepaying the filing fee unless he demonstrates that he is in imminent danger of serous physical injury. *Id.*

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of judgment. The court cannot extend these deadlines. *See* Fed. R. Civ. P. 6(b)(2).

A party is expected to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.